UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

INEZ TITO LUGO,

         Petitioner,

    v.

WARDEN OF THE CALIFORNIA
MEDICAL FACILITY, et al.,

         Respondents.
_____/

NO. CIV. S-99-1151 LKK/GGH P

O R D E R

    Pending before the court are briefs addressing petitioner's habeas petition. This court declined to adopt the magistrate judge's Findings and Recommendations with respect to petitioner's third and fourth claims. These claims pertain to the trial court's failure to obtain a waiver of petitioner's presence during the readback and video playback of trial testimony during jury deliberations. The court appointed the Federal Defenders' Office to represent petitioner and ordered briefing on the proper remedy for this error.

////

**I.**

**Background**

**A.   State Court Proceedings**

The court adopts by reference the factual background as set forth in the September 3, 2004 Findings and Recommendations. See Findings and Recommendations, at 8-13.  Relevant for the purposes of this order are the discussions regarding readbacks of trial testimony during jury deliberations.  As discussed in the Findings and Recommendations, after the jury retired to deliberate, the court discussed with counsel the procedures for the re-reading of testimony.  Petitioner's counsel stipulated that it would suffice to be notified of any readback requests. See F&Rs at 33-34.

On the first day of deliberations, the jury requested video equipment to view petitioner's interview with the police.  CT 163, 165.  The record is silent as to whether either the petitioner or his counsel was informed that the jury had requested the video equipment.  The record is also silent as to how much of the video was viewed.  Petitioner asserts in his verified petition that neither he nor his counsel were notified or present when the video was played.  See Petitioner's Habeas Petition at 32.

Two days later, the jury requested a readback of the testimony of petitioner and that of his daughter, Terra Lugo. CT 167.  The record reflects that counsel was informed of these readbacks and stipulated that the readback could take place in

2

the jury room. The record is silent as to whether petitioner was present when counsel was informed of the readbacks. The court reporter read the testimony of Terra Lugo on the morning of August 16, 1990 and concluded at around 11 a.m. that same morning. The petitioner's testimony was read to the jury on August 17, and the readback lasted from 9:15 a.m. to 2:20 p.m., at which point the court reporter stopped reading at the jury's request. The court reporter stopped reading just prior to the reading of the redirect examination. CT 107.

The jury returned a verdict of guilty at 3:00 p.m. that same day. After the jurors were polled and excused, petitioner's defense counsel objected to the "juror's request and how the transcript was read, and I will wait until Monday." RT 1532. The court responded:

> The court: For the record, what happened was the request was to have the testimony of the defendant read to the jury. We granted that request. The court reporter commenced reading that through the morning, and part of the afternoon.
>
> She finished what notes she had with her, had completed, to my understanding, all of the direct and most, but not all, of the cross examination.
>
> The juror's asked to take a recess, and to consider whether, – well, while the court reporter was retrieving her other notes, they had heard all that they required.
>
> They went back into deliberations briefly after they recessed and advised the bailiff that they did not require any further reading, and I discussed that with counsel, and allowed them to make that decision.

3

1 RT 1532-33.  When the court reconvened on Monday, petitioner's
2 defense counsel did not renew his objection and the court made
3 no ruling on it.  RT 13-19.

**B.   Federal Proceedings**

This court adopted the magistrate judge's Findings and Recommendations with respect to claims one, two, five and six. The court did not adopt the findings and recommendations with respect to claims three and four.  These claims relate to the failure of the trial court to obtain from petitioner a waiver of presence during the readback and playback of trial testimony. Citing to Turner v. Marshall, 63 F.3d 807, 815 (9th Cir. 1995), this court held that "[f]ailure to allow the defendant to be present at the readback of testimony is constitutional error, subject to harmless error."  Lugo v. Warden of the California Medical Facility, Civ. Case No. 99-1151 (Order issued Sept. 21, 2005).  The court requested the assistance of the Federal Defender's Office to determine the effect of the petitioner's non-waiver.  "It is unclear to the court what remedies and procedures are appropriate in light of this error."  Id.

Soon thereafter, counsel for petitioner filed a status report and explained that he had "undertaken an investigation to determine whether the Court would be aided by conducting an evidentiary hearing."  The report went on to state:

> Counsel's investigator has interviewed eight of the twelve jurors in Mr. Lugo's first trial but, despite having left messages and in some cases sending follow-up letters and leaving business cards, she has been unable to interview the remaining four jurors, including the jury foreperson,

4

>John Blim. She has determined that the court reporter, Karen Nowack, is still employed as a part-time court reporter at the Sacramento County Superior Court, but Ms. Nowack has not responded to at least four messages left for her. The investigator has interviewed one of the bailiffs, but has been able to make contact with the other bailiff, J. Pettit, who appears to have been the principal bailiff and the person who brought the videotape and viewing equipment into the jury room.

Petitioner's Status Report. Counsel requested that the court set a status hearing several months out, which would allow additional time for investigation. Subsequently, petitioner requested that the status hearing be vacated and that the parties simply submit briefs.

The State devotes the majority of its brief to arguing that petitioner's claims should be rejected because of the procedural default doctrine. The court discusses this issue first and then turns to the merits of petitioner's claims. As set forth below, the court finds that the State waived their procedural default defense and thus, the court must address the merits of petitioner's claims. However, the court ultimately concludes that the errors are harmless.

## II.

### Procedural Default

The State asserts that petitioner did not raise claims three or four on direct appeal or in his state habeas petitions before the Sacramento County Superior and the California Court of Appeal. Rather, they were raised for the first time before the California Supreme Court. That court denied the claims with

5

a citation to In re Robbins, 18 Cal. 4th 770 (1998).  A citation to Robbins indicates that the petitioner failed to timely present his claims.  In re Sanders, 87 Cal. Rptr. 2d 899, 903 (1999).

In his brief, petitioner responds that the State failed to raise the procedural default doctrine in its answer, thereby waiving the defense.  In support of its position, he relies on two cases.  First, in Nardi v. Stewart, 354 F.3d 1134 (9th Cir. 2004), the Ninth Circuit held that the state waives the one-year statute of limitation defense under AEDPA by failing to assert it in its answer, and that the court may not raise the issue sua sponte thereafter.  Id. at 1141-42.  Second, in Morrison v. Mahoney, 399 F.3d 1042 (9th Cir. 2005), the Ninth Circuit expanded this rule to encompass the procedural default defense. Id. at 1046-47.

After petitioner filed his brief, and before this court issued this order, the Supreme Court decided Day v. McDonough, 126 S. Ct. 1675 (2006), which abrogated the Ninth Circuit's holding in Nardi.  The Court held that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."  Id. at 1684. Although the timeliness at issue in Day related to whether the petitioner had complied with AEDPA's statute of limitations, the Court "not[ed] that it would make scant sense to distinguish in this regard AEDPA's time bar from other threshold constraints on federal habeas petitioners."  Id.  Accordingly, it is likely

6

that this rule encompasses the procedural default doctrine.

Nevertheless, Day cautioned that a court may only exercise its discretion to rule on these threshold constraints that were not raised in the answer within limits.  One important limit is that "should a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice."  Id., at 1685, n.11.  Here, there is every indication to suggest that the waiver was intelligent. Accordingly, the court finds that the state has waived the procedural default defense, and that the court may not disregard that waiver.[1]  The court turns to the merits of petitioner's claims.

### III.

### Harmless Error Review

**A. Applicable Law**

As discussed in the court's previous order, it is an error to permit the readback of testimony without first obtaining defendant's personal waiver of his right to be present.  Failure to allow the defendant to be present at the readback of testimony is constitutional error, subject to harmless error review.  Hegler v. Borg, 50 F.3d 1472, 1477 (9th Cir. 1995).  On collateral review, the district court must determine whether the

---

[1] There is one narrow exception which does not apply here. In Day, the Court found that if the failure to waive a statute of limitations defense was the result of mistake or human error, a court may disregard the waiver.  Here, there is simply no evidence that the failure to raise the procedural default defense was the result of mistake or human error.

7

1 error "had substantial and injurious effect or influence in
2 determining the jury's verdict." Brecht v. Abrahamson, 507 U.S.
3 619, 638 (1993).
4   In Brecht, the Supreme Court recognized that habeas corpus
5 is "an extraordinary remedy." 507 U.S. at 633.  There, the Court
6 also held that an error is harmless unless it had "a substantial
7 and injurious effect or influence in determining the jury's
8 verdict." Id., citing Kotteakos v. United States, 328 U.S. 750,
9 776 (1946).  Any time a federal court in a habeas proceeding is
10 in "grave doubt" as to the harmlessness of an error, it must
11 find that the error is not harmless and the petitioner must
12 prevail.  O'Neal v. McAninch, 513 U.S. 432, 437-45 (1995).
13   There is some confusion as to which party bears the
14 responsibility for demonstrating that the error was harmless or
15 harmful.  In Belmontes v. Brown, the Ninth Circuit remarked that
16 "[o]ur cases appear to be divided as to whether the petitioner,
17 the state, or neither bears the responsibility for showing
18 harmless error under the Brecht harmless error standard."  414
19 F.3d 1094, 1138-1139 (9th Cir. 2005) (overruled on other grounds
20 by Ayers v. Belmontes, 127 S. Ct. 469 (2006)).
21   In Belmontes, the Ninth Circuit compared Rodriguez v.
22 Marshall, 125 F.3d 739, 744 (9th Cir. 1997) (placing burden on
23 petitioner), with Keating v. Hood, 191 F.3d 1053, 1062 (9th Cir.
24 1999) (as amended) (placing burden on state), and Thompson v.
25 Borg, 74 F.3d 1571, 1575 (9th Cir. 1996) (rejecting burdens of
26 proof in favor of an independent determination of whether a

8

1  trial error had a substantial and injurious effect).  See also
2  Morales v. Woodford, 336 F.3d 1136, 1148 (9th Cir. 2003) ("[T]he
3  state must provide us with a 'fair assurance' that the error was
4  harmless under Brecht.").

5      Despite this lack of clarity, the Belmontes decision
6  suggests that the question of who has the burden is not
7  conclusive.  The Ninth Circuit observed that "[t]he Supreme
8  Court has made clear that whether a trial error had a
9  substantial and injurious effect is not to be analyzed in terms
10 of burdens of proof." Id. at 1138, citing Mancuso v. Olivarez,
11 282 F.3d 728, 737 n. 4 (9th Cir.), as amended, 292 F.3d 939
12 (2002).  The Belmontes decision concludes that the reviewing
13 court has "the responsibility to determine this legal question
14 'without benefit of such aids as presumptions or allocated
15 burdens of proof that expedite factfinding at the trial.'" Id.
16 (quoting O'Neal, 513 U.S. at 437).

17     The court's task, ultimately, is to determine what effect
18 the error had upon the verdict.  "Only if the record
19 demonstrates the jury's decision was substantially influenced by
20 the trial error or there is grave doubt about whether an error
21 affected a jury in this way will [petitioner] be entitled to
22 habeas relief." Hegler, 50 F.3d at 1478 (citations omitted).
23 **2.   Whether Petitioner's Claims Constitute Harmless Error**
24     The court is in a difficult position.  The State's brief
25 barely addresses the issue of harmlessness.  The State, hoping
26 that the court would rule on procedural grounds, dedicates only

9

one page to the question of harmlessness.  Failing to appreciate the discussion of burdens and responsibilities set forth in the <u>Belmontes</u> case, the State simply asserts that petitioner "has failed to show trial error that had a 'substantial and injurious effect or influence in determining the jury's verdict.'" State's Br. at 8 (quoting <u>Brecht</u>, 507 U.S. at 638).  The State goes on to assert that in light of petitioner's unsuccessful investigation, an evidentiary hearing is unnecessary.  The State does not, however, provide any argument which instills in the court a "fair assurance" that the error was harmless.  <u>See</u> <u>Morales v. Woodford</u>, 336 F.3d 1136, 1148 (9th Cir. 2003) ("[T]he state must provide us with a 'fair assurance' that the error was harmless under <u>Brecht</u>.").  On this ground alone, the court is tempted to grant petitioner's petition.

That said, this case presents a somewhat unique situation.  As noted above, the court appointed the Federal Defender's Office to assist petitioner.  After conducting investigation, which included interviews of former jurors, and attempts to interview the court reporter, the petitioner's appointed counsel has been unable to provide any further factual development of plaintiff's claims.  Petitioner, therefore, did not request an evidentiary hearing.

Several courts confronting the issue of testimony readbacks outside the defendant's presence have found harmless error after conducting an evidentiary hearing.  <u>See</u>, <u>e.g.</u>, <u>Hegler</u>, 50 F.3d at 1472.  Here, however, it is clear that such a hearing would

1 be futile.  Where the petitioner cannot "forecast any evidence
2 beyond that already contained in the record, or otherwise to
3 explain how his claim would be advanced by an evidentiary
4 hearing," the court may decline to hold such a hearing.
5 Cardwell v. Greene, 152 F.3d 331, 338 (4th Cir. 1998), overruled
6 on other grounds by Bell v. Jarvis, 236 f.3d 149 (4th Cir.
7 2000).

8   In short, the court is left with the record, petitioner's
9 verified petition, and nothing more.  There is simply nothing in
10 the record or the petition which "demonstrates the jury's
11 decision was substantially influenced by the trial error."
12 Hegler, 50 F.3d at 1478.

13   This conclusion is consistent with the Ninth Circuit's
14 decision in Hegler v. Borg, where the court concluded that the
15 petitioner not being present for readbacks was harmless error.
16 The court found that the petitioner was not prejudiced by his
17 absence from the readback:

> The evidentiary hearing conducted by the district court established that the court reporter read the testimony without inappropriate inflection or comment, and that the substance of the readback was not materially different from the witness's testimony at trial. Indeed, there is no evidence indicating there was any improper conduct during the reading of the testimony to the jury. Under these circumstances, a habeas petitioner is not entitled to relief.

Hegler, 50 F.3d at 1478.  Here, as in Hegler, there is no evidence which suggests that there was any improper conduct during the readback of the testimony.

11

1  Petitioner relies extensively on Fisher v. Roe in support
2  of his position that his absence increased the risk of
3  prejudice.  See Fisher v. Roe, 263 F.3d 906, 916 (9th Cir. 2001)
4  (overruled on other grounds by Payton v. Woodford, 346 F.3d 1204
5  (9th Cir. 2003)).  In Fisher, the petitioners claimed that
6  neither they nor their counsel knew of or were present for
7  readbacks to the jury.  "In short, they had been completely and
8  unilaterally excluded from that part of the trial." Id. at 916.
9  The court remarked that the "trial record and the district court
10 record do not shed any light on whether the court reporter
11 unduly emphasized any particular testimony, either by failing to
12 read cross examination or through improper voice inflections."
13 Id. at 918.  The court concluded that the case was "one of the
14 rare situations in which a review of the record leaves us at the
15 least in 'virtual equipoise' as to whether the error had a
16 substantial and injurious effect or influence on the jury's
17 verdict.  Accordingly, [petitioners] must be granted relief."
18 Id. (citations omitted).
19   In the case at bar, the transcript clearly indicates that
20 defense counsel stipulated to being told about the readbacks,
21 and was in fact informed each time that a readback was
22 requested.  It is unknown if counsel knew of the video playback.
23 In this respect, the Fisher case is distinguishable.  In Fisher,
24 neither petitioners nor their counsel even knew the readbacks
25 took place.  Here, counsel knew of the readbacks and stipulated
26 to having the readbacks occur in the jury room.  Certainly,

1 these facts suggest that the harm to petitioner was mitigated by
2 the presence of his attorney.  Although the record does not
3 elaborate on who was present in the jury room when the testimony
4 was read, or which exact sections of the testimony was read,
5 petitioner's counsel was alerted to the fact that the readbacks
6 were occurring.  In this respect, the facts in the case at bar
7 are more similar to those in Hegler, where the court found that
8 the absence of petitioner from the readbacks was harmless.

While petitioner makes several arguments about how his absence may have undermined the verdict, there is simply no evidence in the record to support these arguments.  Moreover, as petitioner concedes, an evidentiary hearing will provide no additional evidence or insight.  In viewing the record as a whole, there is simply nothing to suggest that these errors were harmful.  There is no evidence which supports a finding that these errors had "substantial and injurious effect or influence in determining the jury's verdict." O'Neal, 513 U.S. at 436. Accordingly, the petition must be DENIED.

IT IS SO ORDERED.

DATED: February 28, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

13